[Cite as *Liberty Retirement Community of Middletown, Inc. v. Hurston*, 2013-Ohio-4979.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| LIBERTY RETIREMENT COMMUNITY OF MIDDLETOWN, INC., | : | | |
| | : | CASE NO. CA2013-01-006 | |
| Plaintiff-Appellee, | | | |
| | : | O P I N I O N | |
| | | 11/12/2013 | |
| - vs - | : | | |
| | : | | |
| BRENDA K. HURSTON, | : | | |
| | : | | |
| Defendant-Appellant. | : | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-05-1795

Freund, Freeze & Arnold, Wayne E. Waite, Adam C. Armstrong, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402, for plaintiff-appellee

Brenda K. Hurston, 1812 Grand Avenue, Middletown, Ohio 45044, defendant-appellant, pro se

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Brenda K. Hurston, appeals from a decision in the Butler County Court of Common Pleas granting a motion by plaintiff-appellee, Liberty Retirement Community of Middletown (Liberty), for judgment on the pleadings. For the reasons outlined below, we affirm.

{¶ 2} On December 12, 2011, Liberty filed a complaint against Hurston in Middletown Municipal Court alleging Hurston failed to pay a debt owed to Liberty following her stay in its nursing home facility between October 1, 2010 and November 19, 2010. On February 17, 2012, Hurston filed several counterclaims against Liberty for alleged failure to validate her debt, mistreatment in Liberty's care as a skilled-nursing facility, and falsification of medical records. Hurston filed an amended complaint on April 23, 2012, naming the law firm representing Liberty as a codefendant. The next day, Hurston filed a second amended complaint with a prayer for relief exceeding $1 million. Due to the $1 million exceeding the jurisdiction of Middletown Municipal Court, the case was transferred to the Butler County Court of Common Pleas.

{¶ 3} Following the transfer, Liberty moved for judgment on the pleadings, which the common pleas court granted and filed an amended decision and entry on December 14, 2012. It is from this decision and entry Hurston now appeals, raising one assignment of error for review.

{¶ 4} "THE MIDDLETOWN TRIAL COURT ERRED BY TRANSFERRING [HURSTON'S] COMPLAINT FOR DAMAGES TO THE COMMON PLEAS COURT OF BUTLER COUNTY[,] OHIO."

{¶ 5} Hurston sets forth several arguments. Specifically, Hurston argues it was error for her counterclaim to be transferred to the court of common pleas and combined under the same case number as Liberty's complaint. Hurston also argues that the common pleas court erred by granting Liberty judgment on the pleadings. Hurston further asserts that the municipal court erred by showing favoritism to Liberty's counsel and granting an extension of time to Liberty to respond to Hurston's counterclaim. We address these arguments in turn.

{¶ 6} First, we address the alleged error of transferring the case to the court of common pleas. R.C. 1901.22(E) provides: "In any action in a municipal court in which the

- 2 -

amount claimed by any defendant in any statement of counterclaim exceeds the jurisdictional amount, the judge shall certify the proceedings in the case to the court of common pleas * * *." The jurisdictional limit for a municipal court is $15,000. R.C. 1901.17. In this case, Hurston sought relief in her counterclaim in the amount of $1 million. Consequently, the municipal court no longer had jurisdiction over Hurston's claim and was required by statute to certify the case to the common pleas court. Furthermore, we fail to see how Hurston was prejudiced by the combination of Liberty's complaint and Hurston's counterclaim under one case number when the matter was transferred to common pleas court. *See* R.C. 2309.59.

{¶ 7} Next, we address whether the common pleas court improperly granted Liberty judgment on the pleadings. An appellate court reviews a trial court's decision on a Civ.R. 12(C) motion for judgment on the pleadings de novo. *J.H. v. Hamilton City School Dist.*, 12th Dist. Butler No. CA2012-11-236, 2013-Ohio-2967, ¶ 8. Civ.R. 12(C) motions are specifically reserved for resolving questions of law and may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." *Id.* Judgment on the pleadings is appropriate under Civ.R. 12(C) "where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Furthermore, in ruling on a Civ.R. 12(C) motion, a court is "limited solely to the allegations in the pleadings and any writings attached to the pleadings." *J.H.* at ¶ 8, citing *Vinicky v. Pristas*, 163 Ohio App.3d 508, 2005-Ohio-5196, ¶ 3 (8th Dist.).

{¶ 8} A judgment on the pleadings is proper when the statute of limitations has run. *See McGlothin v. Schad*, 194 Ohio App.3d 669, 2011-Ohio-3011 (12th Dist.). In determining the proper statute of limitations for a cause of action, the court must review the complaint to determine the essential character of the claim. *Brittingham v. Gen. Motors Corp.*, 2d Dist.

Montgomery No. 24517, 2011-Ohio-6488, ¶ 15, citing *Love v. Port Clinton*, 37 Ohio St.3d 98 (1988). "[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Love* at 99.

{¶ 9} Typically, an action upon a medical claim must be commenced within one year after the cause of action accrued. R.C. 2305.113(A). It is well-established that a cause of action for medical malpractice accrues and the statute of limitations commences to run upon the latter of either: (1) the termination of the physician-patient relationship for that condition, or (2) a patient discovers, or, in the exercise of reasonable care and diligence, should have discovered, the resulting injury. *Hans v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 07AP-10, 2007-Ohio-3294, ¶ 10, citing *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111(1983), syllabus. Under the discovery rule, a "cognizable event" triggers the statute of limitations. A "cognizable event" is defined as "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." *Allenius v. Thomas*, 42 Ohio St.3d 131, 134 (1989). "The occurrence of a cognizable event imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." *Flowers v. Walker*, 63 Ohio St.3d 546 (1992), paragraph one of the syllabus.

{¶ 10} Hurston's claims are not clearly set forth. However, Hurston does specifically list a breach of contract count in her second amended complaint and initially claimed Liberty failed to validate a debt by filing its complaint "too soon" and that the documents submitted to her medical insurance company by Liberty during her stay were fraudulent. It is "well-settled" that medical claims constitute malpractice "regardless of whether such misconduct is framed

in terms of negligence or breach of contract." *Knepler v. Cowden*, 2d Dist. Montgomery No. 17473, 1999 WL 1243349, *8 (Dec. 23, 1999). *See Robb v. Community Mut. Ins. Co.*, 63 Ohio App.3d 803, 805 (1st Dist.1989); *Brittingham* at ¶ 19. Additionally, the statutory definition of "medical claim" does not permit a theory of fraud to be split from a theory involving medical treatment. *Harris v. Ohio State Univ. Hosp. Med. Ctr.*, 10th Dist. Franklin No. 06AP-1092, 2007-Ohio-1812, ¶ 10. Furthermore, "'medical claim' means any claim that is asserted in any civil action against a * * * home * * * and that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3). "Medical claim" also includes such claims that result "from acts or omissions in providing medical care" or "from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment." *Id.*

{¶ 11} In this case, Hurston's contentions relate to medical claims. Hurston states that she was not seen by any assigned physicians at the "skilled-nursing home facility" and was unable to choose her own physician. Hurston also claims that Liberty illegally transferred her to a different room, denying her right to adequate physical therapy, indoor space, and wheelchair compatible bathroom. She argues these actions led to a slip and fall resulting in a head injury and leg contusion. Hurston also claims that she was not given her pain medication in a timely manner and physical therapy aggravated a preexisting condition. Hurston asserts that she was placed in a deliberate position to hurt herself when the wheels on her hospital bed were not firmly locked.

{¶ 12} All of Hurston's alleged injuries occurred while she was being treated at Liberty. These conditions, including the alleged slip and fall, failure to provide medication in a timely matter, and aggravation of a preexisting condition by physical therapy, all could have been reasonably discovered while Hurston was a patient at Liberty. Hurston's last day of care at Liberty was November 19, 2010. Hurston filed her initial counterclaim on February 17, 2012,

which is well outside of the one-year statute of limitations for a medical claim. Consequently, the granting of Liberty's motion for judgment on the pleadings was proper.

{¶ 13} Last, we address Hurston's claim that favoritism was shown by the municipal court to Liberty's counsel. After a case is transferred from municipal court to a court of common pleas, "[t]he case shall then proceed as if it had been commenced originally in the court of common pleas." R.C. 1901.22(G). It appears Hurston is arguing that favoritism was shown to Liberty's counsel because the municipal court granted Liberty an extension of time to file an answer to Hurston's counterclaims. Liberty filed a motion for an extension of time to reply to Hurston's counterclaims within the time frame allotted to respond. Pursuant to Civ.R. 6 (B), "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order * * *." While Hurston appears to argue that she was not afforded the same courtesy, the municipal court granted Hurston leave to file two amended counter complaints. Furthermore, Hurston does not assert any prejudice regarding any late filing by Liberty. *See Estate of Williams v. Deutsche Bank Trust Co. Am.*, 8th Dist. Cuyahoga No. 90967, 2008-Ohio-3981, ¶ 15-16. Accordingly, it was in the court's discretion to allow an extension of time and we do not see how the court impermissibly showed favoritism to Liberty.

{¶ 14} In light of the foregoing, we fail to see how the municipal court erred by transferring the case to the common pleas court. Additionally, the common pleas court did not err in granting Liberty judgment on the pleadings. Furthermore, neither court impermissibly showed favoritism to Liberty's counsel. Hurston's sole assignment of error is overruled.

{¶ **15**} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.